UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PAULA WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> CONDUENT HUMAN SERVICES LLC, <br><br> Defendant. | CAUSE NO. 3:19-CV-1061 DRL-MGG |

<u>OPINION & ORDER</u>

Paula Williams filed a *pro se* complaint alleging a host of federal claims arising from her years of employment at Conduent Human Services. Conduent now seeks to enforce an arbitration agreement and dismiss this action. Ms. Williams asks to stay arbitration and enter default judgment against Conduent. Because a valid agreement to arbitrate questions of arbitrability exists, the court grants Conduent's motion, denies Ms. Williams' motions, and dismisses the case.

BACKGROUND

Ms. Williams worked with Conduent from September 2013 until her April 2019 termination. ECF 1 at 2. In December 2018, she was transferred to another position. ECF 8-2 at 1; ECF 12-2 ¶¶ 23-24. Upon her transfer, Conduent required Ms. Williams to complete certain paperwork. ECF 12-2 ¶¶ 23-24; ECF 12-6. Part of that paperwork was an agreement to be bound by the company's dispute resolution plan (DRP). ECF 12-2 ¶ 24; ECF 12-6 at 6. Conduent describes the DRP as "a mandatory system for settling workplace disputes and provides for mandatory, binding arbitration of most legal claims, including employment-related claims." ECF 12-2 ¶ 7. The agreement states:

> Having been accepted for employment and as part of my acceptance, I CONSENT TO THE EXCLUSIVE **FINAL AND BINDING RESOLUTION BY ARBITRATION** UNDER THE DRP **OF ALL DISPUTES (as defined in the DRP) INCLUDING LEGAL CLAIMS**, past, present or future, arising out of, relating to, or concerning my employment with Conduent, terms and conditions of Conduent employment, and/or separation or termination of Conduent employment[.]

ECF 12-6 at 6 (emphases original). The agreement goes on to say: **DISPUTES WILL BE ARBITRATED RATHER THAN DECIDED BY A COURT OR JURY. I AM WAIVING MY RIGHT TO A JUDGE OR JURY TRIAL**. *Id.* at 7. On the final page of the agreement, Ms. Williams' electronic signature and IP address appear, dated December 18, 2018. *Id.* at 9.

In April 2019, Ms. Williams was terminated from her position. ECF 1 at 2; ECF 12-2 ¶ 23. She alleges she was wrongfully terminated after filing multiple complaints of harassment and discrimination both internally and with the Equal Employment Opportunity Commission. ECF 1 at 2. Her EEOC charge alleged ongoing discrimination on the basis of her sex, race, and disabilities. ECF 1-1 at 8. Her complaint realleges those claims and several others arising from her employment. ECF 1 at 1. After Conduent approached Ms. Williams about arbitration pursuant to the DRP, she preemptively filed a motion to stay arbitration. ECF 7; ECF 8 at 1. Conduent responded with its own motion to compel arbitration and dismiss this case pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3).

## STANDARD

The Federal Arbitration Act (FAA) requires courts to treat written arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 629 (2009) (quoting 9 U.S.C. § 2). The question of arbitrability—whether the parties must submit a particular dispute to arbitration—is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise[.]" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

Under the FAA, three things are needed to compel arbitration: (1) a written arbitration agreement, (2) a dispute within the agreement's scope, and (3) a refusal to arbitrate that dispute. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "[I]f a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to

2

piecemeal litigation." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). A court may not refuse to compel arbitration on claims merely because some of the claims are not arbitrable. *Id.*

"The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). This circuit has analogized the standard to that required of a party opposing summary judgment under Federal Rule of Civil Procedure 56(e). *Id.* The opposing party must demonstrate that a genuine issue of material fact warranting a trial exists. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*; *see also Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) (same). In short, the party opposing arbitration must identify a triable issue concerning the agreement's existence or scope to preserve a trial. *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir. 1987).

In addition to 9 U.S.C. § 4, Conduent also brings a motion to compel arbitration under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3). Courts have debated which is the more appropriate rule to enforce an arbitration provision. *See, e.g.*, *DeMidio v. REV Rec. Grp., Inc.*, 2018 U.S. Dist. LEXIS 61070, 16 n.1 (N.D. Ind. Apr. 10, 2018) (Lee, J.) (collecting cases and applying a Rule 12(b)(3) standard). This circuit has previously sanctioned the use of Rule 12(b)(3) to enforce an arbitration provision, *see, e.g.*, *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011), and has underscored that an agreement to arbitrate does not undermine the court's subject matter jurisdiction, *see Grasty v. Colo. Tech. Univ.*, 599 F. Appx. 596, 597 (7th Cir. 2015). Because an arbitration agreement is a type of forum selection clause, motions to compel arbitration are "brought properly under Federal Rule of Civil Procedure 12(b)(3), not 12(b)(1)." *Id.* (citing *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014)); *see also Sherwood v. Marquette Transp. Co., LLC*, 587 F.3d 841, 844 (7th Cir. 2009) ("An arbitration agreement is a specialized forum-selection clause.").

3

DISCUSSION

The Federal Arbitration Act was enacted to "reverse the longstanding judicial hostility to arbitration agreements" that carried over into American courts from English common law. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA created a strong policy favoring arbitration, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), but it remains a matter of contract, so courts must view arbitration agreements on equal terms as other contracts, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply state law principles that govern the formation of contracts. *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

The court must first decide whether a valid contract to arbitrate exists before it decides whether to stay an action and order arbitration based on the contract's scope. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). A "court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). "Where there is no provision validly committing them to an arbitrator, these issues typically concern the scope of the arbitration clause and its enforceability." *Id.* (citations omitted).

The FAA allows arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility*, 563 U.S. at 339 (quotations omitted). "[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock*, 561 U.S. at 296; *see*, *e.g.*, *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 514 (7th Cir. 2003) (remanding case to assess whether there was a meeting of the minds); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001) (holding that "as arbitration depends on a valid contract an argument

4

that the contract does not exist can't logically be resolved by the arbitrator"); *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130-31 (7th Cir. 1997) (argument that a promise lacked consideration was a judicial issue).

The arbitration agreement here contains a delegation provision, however.[1] A delegation provision is an agreement to arbitrate threshold or "gateway" issues concerning arbitration. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010). They often cover questions of arbitrability, "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68-69. A delegation provision is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. It is severable from the remainder of the agreement and must be specifically challenged to avoid its effect. *Id.* at 71-72.

This delegation provision extends to "any claim that all or part of this Agreement is void or voidable." ECF 12-6 at 6. The delegation provision is nearly identical to the one in *Rent-A-Center*, 561 U.S. at 66. This circuit also faced a similar delegation provision in *Johnson v. Western & Southern Life Ins. Co.*, 598 F. Appx. 454, 455 (7th Cir. 2015) (granting the arbitrator "exclusive authority to resolve any dispute . . . including, but not limited to, *any claim that all or any part of the agreement is void and voidable*") (emphasis added). In both cases, the plaintiff did not specifically challenge the delegation provision and the court presumed it valid. *See Rent-A-Center*, 561 U.S. at 72 ("unless [the plaintiff] challenged the delegation provision specifically," the court must treat it as valid and enforce it, "leaving any challenge

---

[1] The delegation provision reads: "Further, **the Arbitrator, and not any federal, state, or local court or agency shall have the exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement including but not limited to any claim that all or part of this Agreement is void or voidable.**" ECF 12-6 at 6 (emphasis original). The full DRP has a parallel delegation provision. *See* ECF 12-4 at 12 ("The Arbitrator, and not any federal, state, or local court or agency shall have the exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this DRP or any associated agreement to arbitrate under its terms, including but not limited to any claim that all or part of this DRP or associated arbitration agreement is void or voidable.").

to the validity of the Agreement as a whole for the arbitrator"); *see also Johnson*, 598 F. Appx. at 455-56 (district court correctly treated the delegation provision as valid when plaintiff did not specifically challenge it). If the court finds the provision here is valid, it must refrain from determining the validity of the arbitration agreement or its scope.

Ms. Williams says she challenges the enforceability of this delegation provision. ECF 8 at 1; ECF 18 at 2; ECF 18-1 at 1. Because Indiana was "the situs of all relevant events in this dispute," the court looks to Indiana contract law to determine whether there exists a valid contract. *See Gibson*, 121 F.3d at 1130. Indiana, in turn, has held that "[w]hether the parties agreed to arbitrate any disputes is a matter of contract interpretation, and most importantly, a matter of the parties' intent." *Druco Rests., Inc. v. Steak N Shake Enters.*, 765 F.3d 776, 782 (7th Cir. 2014) (quoting *MPACT Const. Group., LLC*, 802 N.E.2d 901, 906 (Ind. 2004)). Under Indiana law, a valid contract requires offer, acceptance, consideration, and mutual assent. *Ellison v. Town of Yorktown*, 47 N.E.3d 610, 617 (Ind. Ct. App. 2015).

It is unclear exactly on what grounds Ms. Williams challenges the delegation provision. ECF 8 at 1; ECF 18 at 2; ECF 18-1 at 1. Her submissions simply say: "I challenge the enforceability of the arbitration agreement and the corresponding delegation provision in question. I did not accept the policy as a contractual commitment to binding arbitration." *See, e.g.*, ECF 18 at 2. She at times cites case law where a delegation provision was found invalid because it lacked acceptance. *See Shockley v. PrimeLending*, 929 F.3d 1012, 1019 (8th Cir. 2019) (finding the plaintiff had not accepted a delegation provision by merely reviewing it in an employee handbook). Liberally construing her submissions, the court understands Ms. Williams to be contesting her acceptance of the provision.

Ms. Williams transferred to a new position in 2018. At that time, she completed paperwork, which included an agreement to be bound by the DRP. ECF 12-2 ¶¶ 23-24; ECF 12-6 at 6. The delegation provision appears in both the agreement and the DRP. On the final page of the agreement, Ms. Williams' electronic signature and IP address appear. ECF 12-6 at 9. Ms. Williams maintains the

DRP was never available for her review,[2] but she does acknowledge that she was required to sign paperwork in December 2018. ECF 18-1 at 2. She used her computer to check boxes and type her name where required, but she says she did not review most of the information contained in the paperwork. *Id.* at 3.

An employee's signature reflects that she accepted the agreement, *see Flynn v. AerChem, Inc.*, 102 F. Supp.2d 1055, 1060 (S.D. Ind. 2000) (Barker, J.) ("If [the plaintiff] signed the Agreement, even without full knowledge of its terms, her signature acts an acceptance of the Agreement's terms."), and parties are generally bound to an arbitration provision even if they did not read it, *Degroff v. Mascotech Forming Technologies-Fort Wayne*, 179 F. Supp.2d 896, 903 (N.D. Ind. 2001) (Cosbey, J.) (holding an arbitration agreement valid when plaintiff claimed she did not review it because she effectively conceded review when she signed the employment application); *see, e.g., James v. McDonald's Corp.*, 417 F.3d 672, 678 (7th Cir. 2005) (applying Kentucky law). Ms. Williams hasn't said that she didn't sign the agreement. She asserts the DRP was never made available for review, though the agreement she signed stated she received and read or had the opportunity to read both the agreement and the DRP. *See* ECF 12-6 at 9. Based on her signature and the acknowledgement in the agreement that she received and read the terms, Indiana law presumes she read the relevant documents. *See Flynn*, 102 F. Supp.2d at 1060 ("It is a basic tenet of contract law that a person is assumed to have read and understood documents that they sign; a lack of understanding or failure to read the contract's provisions does not relieve a party from the terms of that agreement.") (citing *Clanton v. United States of America*, 686 N.E.2d 896, 900-01 (Ind. Ct. App. 1997)).

It is also not enough to claim Conduent never provided the documents. *See Tinder*, 305 F.3d 735-36 (plaintiff asserting she never saw or reviewed the arbitration agreement did not raise a genuine

---

[2] Ms. Williams claims the first time she ever received the full DRP was when Conduent sent it to her during this litigation. ECF 18-1 at 2.

issue of material fact). Ms. Williams "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests;" instead, she must "identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* (citing *Oppenheimer*, 56 F.3d at 358). Ms. Williams has not provided evidence to support her claim that the DRP was never available for review. Instead, she signed an agreement saying just the opposite. Further, on this record, the availability of the DRP doesn't bear on her acceptance of the delegation provision as it appears in the agreement itself, without the need to reference the DRP. Her choosing not to review the delegation provision does not prevent her from accepting its terms. *See Degroff*, 179 F. Supp.2d at 903.

The facts here are quite different from *Shockley*, 929 F.3d 1012, on which Ms. Williams relies. In that case, the delegation provision was contained in an employee handbook. *Id.* at 1018-19. The employer could not show acceptance of the provision by mere continuation of employment, *id.* at 1019, and there was nothing in the agreement stating continued employment constituted acceptance of the terms. *Id.* In this case, Ms. Williams not only signed an agreement containing the delegation provision, that agreement stated that her continued employment constituted acceptance and consent to its terms. ECF 12-6 at 8.

The evidence before the court shows that Ms. Williams did indeed accept the terms of the delegation provision. To the extent her arguments can be construed liberally to say the delegation provision lacked consideration, not just the agreement generally, that position is similarly unconvincing. *See Flynn*, 102 F. Supp.2d at 1061 (agreement saying that acceptance was "in consideration and as a condition of [employment]," and employer's promise to arbitrate all claims was sufficient consideration); *see also Gibson*, 121 F.3d at 1131 (agreement is enforceable when both parties are bound by its terms) (citing *Kokomo Veterans, Inc. v. Schick*, 439 N.E.2d 639, 645 (Ind. Ct. App. 1982)); *see, e.g.*, *Tinder*, 305 F.3d at 736 (applying Wisconsin law, the agreement was not rendered

illusory by the defendant's ability to modify or terminate its policies at any time because both parties were bound to arbitrate).

To be clear, the court's decision is strictly limited to Ms. Williams' claims pertaining to the validity of the delegation provision as raised in her motion to stay arbitration (ECF 8 at 1) and her response to the motion to compel (ECF 18 at 2). Having established a valid delegation provision exists, the court cannot wade into arguments concerning the validity of the arbitration agreement. Any other challenges to the arbitration agreement and the terms of the DRP, including acceptance and consideration, are left to the arbitrator to decide. This court is not the proper venue for those arguments. *See Rent-A-Center*, 561 U.S. at 72; *Grasty*, 599 F. Appx. at 597.

Ms. Williams has not created a genuine issue of material fact that prevents her claims from proceeding to arbitration. There is a valid delegation clause that requires this court to defer all questions of arbitrability to the arbitrator; therefore, this court is the improper venue for any claims at this time. While the FAA only requires this court to stay this proceeding until such arbitration occurs, 9 U.S.C. § 3, the court may go further and dismiss the case. There is a trend among federal courts favoring dismissal of a case that is subject to arbitration. *See Johnson v. Orkin*, 928 F. Supp.2d 989, 1008 (N.D. Ill. 2013); *see also Hornbuckle v. Xerox Bus. Serv., LLC*, 2015 U.S. Dist. LEXIS 18374, 11-12 (S.D. Ind. Feb. 13, 2015) (collecting cases). This circuit has previously affirmed dismissals of suits when all claims are arbitrable. *See, e.g.*, *Grasty*, 599 F. Appx. at 597; *Baumann v. Finish Line, Inc.*, 421 F. Appx 632, 636 (7th Cir. 2011). All current claims are subject to arbitration *via* the delegation provision; therefore, the court is not the proper venue for those claims and dismissal is an appropriate solution in this case. This dismissal is without prejudice—a dismissal for improper venue "is not an adjudication on the merits." *Johnson*, 598 F. Appx. at 456.

While the court dismisses this case, it refrains from compelling arbitration. The FAA requires the "hearing and proceedings," pursuant to an agreement compelled to arbitration, "shall be within

the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. That is the case unless an agreement contains a forum selection clause. *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009). Then "only the district court in that forum can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995)).

Here, the location of the hearing is to be decided by the arbitrator. ECF 12-4 at 15. The arbitrator must reside in the "geographic region of the United States bearing the most significant relationship to the Parties' Dispute." *Id.* at 14. Once selected, the arbitrator will choose the location of the hearing using the "same factors determining personal jurisdiction and venue which would be applied by a United States District Court sitting at the location of the arbitrator." *Id.* at 15. An order to compel under 9 U.S.C. § 4 from this court would require the hearing to take place within this district; however, that would strip the arbitrator of any decisionmaking power over the location of the hearing. It may well be that the arbitrator would choose this district as the hearing location, but the parties have not argued this issue and the court is left only with uncertain possibilities as to this outcome and its authority to compel arbitration in this district.

If Ms. Williams wishes to pursue her claims, she must do so *via* arbitration and there address any questions of arbitrability. According to the DRP, either Ms. Williams or Conduent can initiate arbitration by submitting a written request on either the American Arbitration Association (AAA) or Judicial Arbitration and Mediation Services (JAMS) and tendering the filing fee.

There is yet another motion left to consider. In the midst of briefing Conduent's motion to compel, Ms. Williams filed a motion for default judgment. At first, Ms. Williams argues a default judgment in her favor is warranted because Conduent has yet to answer her complaint. Then, she requests a declaratory judgment on all motions concerning arbitration. Given the title of her motion

and its content otherwise, the court assumes Ms. Williams meant default judgment instead of a declaratory judgment.

Ms. Williams has not presented facts that support this request. An entry of default is not warranted under Fed. R. Civ. P. 55(a) because Conduent has appeared and defended this action. *See Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 858 (7th Cir. 2011) (an appearance requires, at minimum, that the defendant engage in "some sort of conduct clearly indicating an intent to defend the suit"); *Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 230 (7th Cir. 1991) (a party has "appeared" in the action where the "party has actually made some presentation or submission to the district court in the pending action") (emphasis removed). Though Conduent has not yet answered the complaint, it was not yet required to do so. Fed. R. Civ. P. 12(a)(4)(A) (party has fourteen days after the court denies a Rule 12 motion to submit its responsive pleading). Her reply lists many federal and state rules, but she does not use them to mold an argument. Because Ms. Williams has not presented facts that warrant a default judgment, the court denies her motion.

Conduent requests the court sanction Ms. Williams for filing a frivolous motion. Specifically, it seeks attorney fees and costs incurred responding to Ms. Williams' motion and asks the court to prohibit her from making additional filings for a specified period of time. Conduent is correct that Ms. Williams, despite her *pro se* status, isn't shielded from sanctions, though the court still has discretion to take that status into account. *See Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990). But the court need not address Conduent's request. While advocating for Rule 11 compliance, it overlooked the provision within that very rule requiring a motion for sanctions be brought separately from any other motion. *See* Fed. R. Civ. P. 11(c)(2). That same provision requires prior service of a motion for sanctions under Rule 5 and then requires a 21-day window before the motion can be filed with the court. *See id.* Conduent has made no representation that it served Ms. Williams before filing this request. To ask the court to enforce the rules, one must first abide by them.

CONCLUSION

Because there is a valid delegation provision covering questions of arbitrability, the court GRANTS Conduent's motion (ECF 12) only insofar as it requests this case be dismissed under Rule 12(b)(3) and DISMISSES this case WITHOUT PREJUDICE. The court DENIES Ms. Williams' motion to stay arbitration (ECF 7) and her motion for default judgment (ECF 19). The clerk of the court is DIRECTED to enter judgment accordingly and terminate the case.

SO ORDERED.

June 17, 2020                                                           *s/ Damon R. Leichty*
                                                                               Judge, United States District Court